PETER BRANTON ET AL *v.* WASHINGTON COUNTY.

1. BOARD OF SUPERVISORS.  *Convicts.  Hiring.  Contract.  Best Bidder.
   Taxpayers.  Equity.  Injunction.*

   Equity will not, at the suit of other bidders although they be tax-
   payers, enjoin the board of supervisors from making or carrying
   out a contract with a person to whom it has awarded the keeping
   of convicted misdemeanants, because the complainants' bid was
   better than that of the party to whom the contract was awarded.

2. SAME.  *Laws 1894, p. 67.  Laws 1896, p. 146.  Laws 1900, p. 138.  Juris-
   diction.*

   The statutes (Laws 1894, p. 67; amended Laws 1896, p. 146; Laws
   1900, p. 138) providing for the hiring out by the board of super-
   visors of convicted misdemeanants, gives the supervisors' court ex-
   clusive jurisdiction of the subject and its action is not under the
   control of other courts.

FROM the chancery court of Washington county.

HON. A. MC. KIMBROUGH, Chancellor.

Branton and others, appellants, were complainants in the
court below; Washington County, by its board of supervisors,
appellee, was defendant there.  The facts are fully stated in
the opinion of the court.

*Campbell & Starling, Jayne & Watson* and *Thomas & Rose,* for appellants.

Laws, relating to contracts for public work, ordinarily require them to be let to the lowest bidder. Our law, relating to contracts for convicts, requires them to be let to the highest bidder, and, of course, the right of the highest bidder, under a law requiring the contract to be let to the highest bidder, is the same as the right of the lowest bidder, under a law requiring the contract to be let to the lowest bidder, so far as the status of the bidder is concerned.

The rights and remedies of the lowest bidder, under various laws are discussed, and many cases cited, in a note to *Anderson* v. *St. Louis Public Schools*, 26 L. R. A., 707; in *State* v. *Richards*, 50 Am. St. Rep., 476, and the lengthy note thereto, and in *Times Publishing Co.* v. *City of Everett*, 43 Am. St. Rep., 865.

The right of a taxpayer to maintain a suit in equity, to enjoin the wasting and misappropriation of public funds, or property, is fully discussed, and many cases are cited, in *McCord* v. *Pike*, 2 Am. St. Rep., 85, and the lengthy note thereto, and, also, in the authorities first cited.

The case of *McCord* v. *Pike, supra,* was a suit to enjoin officers of a county from selling lands of the county for a less sum than was offered therefor by another bidder.

In *Times Publishing Co.* v. *City of Everett*, one, who was the lowest bidder for the public printing, and who was also a taxpayer, maintained an injunction against awarding the contract to a higher bidder.

The state has the right to the services of its convicts, and may control or dispose of them in such way as to make them financially profitable, and to that end, provision is made for working them in several ways. The net fines and forfeiture imposed upon convicts are, under our constitution, payable into the treasury of the counties, and convicts sentenced to imprisonment in the county jail, or to the payment of a fine and

costs, are required to work during such imprisonment, and until, by their work, the fine and costs are paid. Convicts so dealt with, stand upon the same footing as public property, and when they are offered to a contractor who will bid the highest amount for them, it is as if public property were offered for sale; and the same rights and remedies that one has as bidder, or as taxpayer, with reference to public property, exist with reference to the convicts.

In most causes in which relief has been denied to the lowest bidder it was upon the ground, either that the law requiring the contract to be let to the lowest bidder was not for his benefit, but for the benefit of the public, or that the tribunal or official awarding the contract was vested by law with discretionary or judicial powers over the matter, which the courts would not control or revise; and in most instances the law under which the cases arose required the contract to be let to the "lowest responsible" bidder, or to the "best" bidder. In these cases the court construed the word, "responsible," as not limited to financial ability, but as involving judgment, skill and integrity, and concluded therefrom that the purpose of the law was to leave the matter to the judgment and discretion of the tribunal or officer letting the contract, and, therefore, the courts refused any relief to one who was merely the lowest bidder.

Chapter 76 of the Laws of 1894, as amended by chapter 133 of the Laws of 1896, makes it the imperative duty of the board of supervisors to require convicts to work out their sentence in one of three ways: (1) By hiring them out to the best bidder, or (2) by letting them to a contractor, or (3) by working them on public roads, public works or a county farm. Which of these ways the convicts are to be worked is left by the law to the discretion of the board of supervisors, and, if the board chooses to let them to a contractor, the term of the contract, not to exceed four years, is left by the law to the discretion of the board, and the approval of the contractor's bond is left

to its discretion; but as who shall be the contractor is not left to the discretion of the board.

Section 16 of chapter 76 of the Laws of 1894 prescribes who shall be the contractor. It provides as follows: "The board of supervisors shall advertise for sealed bids, in the manner that it would advertise a public work, stating the amount of the bond required and the date of the opening of the bids, and, at the time specified, or as soon thereafter as practicable, it shall open the bids in secret session, and award the contract to the best bidder, being the person who will agree to pay the highest amount for the two classes of convicts, by the month; but the board may reject all bids and agree with some person who will make a better offer than any of the rejected bids."

Evidently the legislature intended to take from the board any pretense of discretion in the matter, else it would not have defined what it meant by "the best bidder," but would have left it to the board to determine, from all the facts, who was the "best bidder."

Not content to leave that to the determination of the board, but, on the contrary, intending to make it the imperative duty of the board to get as high a price for the convicts as possible, the legislature defined what it meant by the "best bidder," as "being the person who will agree to pay the highest amount for the two classes of convicts by the month." The last clause of the section, it is true, authorizes the board to reject all bids and contracts with some person who will make a "better offer than any of the rejected bids." Under that clause the board is bound to make the contract with the person who will give the highest amount for the convicts by the month. "Best bidder" has already been defined in the section to mean the person who will give the highest amount for the convicts by the month, and the words "better offer" have the same meaning. The clear meaning of the law is, that if the board rejects all bids, it must do so for the purpose of getting a still higher amount than any of the rejected bids.

*W. R. Trigg*, for appellee.

The board of supervisors as a court is the creation of the constitution, and has full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe and perform such other duties as may be required by law. Constitution 1890, sec. 170.

Relief against judgments or orders of the board of supervisors is by an appeal to the circuit court. Code 1892, § 79. This remedy reaches to and protects persons affected, although not parties to the cause before the board, and they may appeal from the decision to circuit court. *Deberry* v. *Holly Springs,* 35 Miss., 385; code 1892, §§ 79, 80. We find exceptions where jurisdiction is given to the chancery court on certain cases against the board of supervisors, such as injunction to restrain the collection of illegal taxes. Sec. 483.

Relief will not be given by injunction against the judgment of a court having jurisdiction where the case proceeds upon ground equally available at law and in equity, and where the court whose decision is appealed from has full power to give relief. 10 Am. & Eng. Enc. L. (1st ed.), 889, note 1.

The better received doctrine now is that in matters of letting contracts for works of public improvement involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by mandamus. *State* v. *Ricard,* 50 Am. St. Rep., 476–483.

This rule, with but slight changes in phraseology, applies to the case now before the court. The chancery court will not interfere with the exercise of this sound disdretion, unless it be the result of a fraud or a gross abuse of official discretion. High on Extraordinary Legal Remedies, sec. 48. It is not the interest of the board or bidder which is to be considered in letting, but the prime object of consideration is the welfare of the public. *Kelly* v. *Chicago,* 62 Ill., 279 (50 Am. St. Rep., notes 491, 492, and 493).

The board of supervisors have sole and entire authority to control and dispose of county convicts. Laws 1894, p. 67; Laws 1896, p. 147; Laws, 1900, p. 138.

TERRAL, J., delivered the opinion of the court.

At the October meeting, A.D. 1900, of the board of supervisors of Washington county, they let the contract for the hiring of the county convicts to George G. Johnson, at the price of $5 per month for both classes of convicts. The appellants (complainants below) bid also for the hiring of said convicts, and offered to pay a greater price for their hire than that offered by Johnson (appellant B. L. Lee offered to pay for first-class convicts each $8.75 per month, and for second-class convicts each $6.75 per month, or for every convict of both classes $7.75 per month), and also tendered good bonds for the performance of their several contracts. The complainants, alleging the contract of the board with Johnson to be illegal and void, because it was not the highest bid for the control and management of said convicts, enjoined the performance of said contract with Johnson, and prayed a decree of the court for its annulment, and for requiring said board to accept the bid of one of the complainants in lieu of that of Johnson, accepted by them, or requiring said board to relet said contract. A demurrer by the board was sustained, and the injunction was dissolved; hence this appeal.

The bill distinctly shows that B. L. Lee, in his bid, offered a greater or better price for the convicts than the bid made by Johnson and accepted by the board; and the point is sharply made that the board must let the contract for the hiring of the county convicts to the highest bidder, and without any discretion in the board, except as to the solvency of the bond tendered, which in this case is admitted to be unimpeachable. The contention that the public distributively, as taxpayers, have a property interest to have the contract for the control and management of convicts let to the highest bidder, like the

interest they have in seeing that public property be sold at the highest price, is delusive. The public have no property interest in convicts. While convicts have forfeited their liberty by crime, and are subjected to hard labor as a punishment, yet in no sense are they to be likened to the dead property belonging to the public. Though convicted of crime, they are human beings, and are entitled to every right and consideration of any other person, except the loss of liberty and the imposition of hard labor upon them for a fixed period. The law relating to the hiring of convicts imposes certain duties upon the contractor and the board alike. Reasonable regulations for the management of convicts must be devised and executed by the contractor or the board, and this function requires sound judgment. The contractor is charged to see that each convict diligently performs the work imposed upon him, and this office requires strict integrity; while another provision forbids cruel and inhuman treatment, and this duty requires the quality of humanity in the contractor. And how best, under different circumstances, to discipline these convicts of every character is always a matter of the highest public concern, requiring wisdom in its solution. One clause of the law provides that the board may reject any and all bids; another, that the board may at any time rescind a contract with the contractor, with no right of appeal on his part, or of delay in delivering the convicts to the sheriff of the county. From these and other provisions of the statute we deduce the conclusion that appellants are not entitled to the remedy here sought. The contract is to be made in the interest of the public, of which the board are the sole judges, and a sufficient restraint upon the action of the board is supposed to be imposed upon them by § 1226, annotated code, 1892, which subjects each of the members to a fine of $1,000 and to imprisonment in the county jail for six months for a willful violation of duty in any respect. While it is probably true that there will be convicts committed to Johnson, as contractor, whose fine and costs will exceed the sum he

has bid for their labor, during the two years for which only he can detain them in working out their penalties, yet complainants' remedy, if any, is not that of the annulment of this contract with Johnson. The bid of Johnson has been accepted, and a contract with him has been completed, and for that reason this remedy by injunction is inappropriate. Considering the several provisions of our statute, and its general purport and intent, we regard the board of supervisors as having exclusive jurisdiction of the subject, and its action is not supervisable by other courts. The authorities examined may be found in the able brief of the counsel, to which we here refer.

*Affirmed.*